COMMONWEALTH of Pennsylvania,
Appellee,

v.

David J. DiNICOLA, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 10, 2000.

Filed April 18, 2000.

John W. Rowden, Meadville, for appellant.

Gary J. Gunnett, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before McEWEN, President Judge, LALLY–GREEN, J., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus.

¶ 1 David J. DiNicola appeals from the judgment of sentence entered in the Court of Common Pleas of Crawford County. We remand.

¶ 2 DiNicola was charged with Aggravated Indecent Assault, Corruption of a Minor and Official Oppression. A jury convicted DiNicola of all counts. At trial, DiNicola was represented by Attorney Daniel Brabender and at sentencing he was represented by Attorney J. Wesley Rowden. DiNicola filed a post-sentence motion at the conclusion of sentencing, alleging trial counsel's ineffectiveness for calling DiNicola's arresting trooper to the stand and asking the trooper questions that revealed DiNicola had asserted his right to remain silent. Additionally, DiNicola argued that trial counsel was ineffective for failing to object to similar questions posed by the Commonwealth that ultimately revealed that trial counsel advised DiNicola to remain silent. The Honorable Gordon R. Miller denied DiNicola's post sentence motion; this timely appeal followed.

¶ 3 DiNicola raises the following issue for our review:

> Did the lower court commit an error of law by finding [that] trial counsel was not ineffective when he utilized a trial tactic that made the jury aware of the defendant's requesting to consult an attorney before meeting with the trooper and that he had advised the defendant to exercise his right to remain silent?

¶ 4 Our standard of review when evaluating a claim of ineffective assistance of counsel is well settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise. *Commonwealth v. Williams*, 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Id.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).[1]

¶ 5 DiNicola argues that trial counsel was ineffective by asking the arresting state trooper questions at trial that revealed DiNicola had asserted his right to remain silent. The testimony, in pertinent part, is as follows:

> (Defense Counsel) Let me ask it this way then Trooper. In fact, nothing

---

1. DiNicola has complied with the requirements of *Commonwealth v. Griffin*, 537 Pa. 447, 454, 644 A.2d 1167, 1170 (1994) (a claim of ineffectiveness must be raised at the earliest possible stage in which the allegedly ineffective counsel no longer represents the petitioner).

here—nothing whatsoever was investigated that might be inconsistent with your theory that Dave DiNicola is guilty here; right? Was anything else investigated that might tend to show otherwise? Anything?

(Assistant District Attorney) Your Honor, I'm going to object and ask to approach.

**Sidebar Discussion**

(The Court): Ma'am.

(Assistant District Attorney): Your Honor, I have a duty to make sure this trial runs appropriately. He's getting into an area where the Trooper is probably going to answer that he did go to the defendant and that to interview the defendant and the defendant immediately attorney'd [sic], asked for an attorney, and said that he would have to talk to his attorney first. And I think we're getting into very inappropriate material here and I think that if he opens the door to this I have the right to question the Trooper as to what steps he took to interview the defendant...

(The Court): Okay. I'll overrule the objection.

(Defense Counsel) Now, was anything done by you—anything—did you look in any other direction here to see maybe if these charges are unfounded?

(Trooper Michael Fetzner): Yes.

(Defense Counsel) What did you do?

(Trooper Fetzner): Your Honor, can I answer—

(The Court): You've got to answer the question, I guess.

(Trooper Fetzner): I called Mr. DiNicola on the telephone to schedule an interview and...

(Assistant District Attorney) You were asked if you made any attempt to find any evidence that would have proven him innocent or else exonerated the defendant and you said you made an attempt to talk to him. What happened...

(Trooper Fetzner): ... I believe those were the two interviews I conducted that day, and within a day or two, I had telephoned Mr. DiNicola and advised him that allegations against him were made at the Brighter Beginnings. He had asked specifically what they were. I told him that I didn't want to get into this, the specifics of the investigation or the allegations, over the phone.

He indicated to me that he wanted to consult his attorney, which I suspect he did. I later—a day or so later, I talked to Mr. Brabender on the phone and he indicated to me that he had spoke with Mr. DiNicola regarding these allegations and that he adamantly denied that they had occurred...

I was trying to schedule some type of meeting that we can meet with his counselor and so I could present the facts and basically ask Mr. DiNicola his version of what was being alleged. Mr. Brabender indicated to me that he didn't see the point of his client giving me a statement, that he already denied the allegations to him, and that he would just – it would just be redundant information.

The interview would consist of him denying that it occurred and that he was advising that he regard his Fifth Amendment right to remain silent...

(Assistant District Attorney) Okay. Now, the purpose of your interviewing Mr. DiNicola was giving him a chance to explain to you what happened and didn't happen?

(Defense Counsel): Your Honor, I think we're far beyond the scope of the questioning here. This is so improper.

(The Court): Sustained.

█ ¶ 6 First, we are required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). The Commonwealth asserts that DiNicola has failed to prove his claim of ineffective assistance of counsel has merit because DiNicola,

through his attorney, adamantly denied the allegations against him. Additionally, the Commonwealth relies upon *Commonwealth v. Bolus*, 545 Pa. 103, 680 A.2d 839 (1996), and asserts that even if the court concluded that DiNicola had remained silent when confronted with the accusation of criminal misconduct, the tacit admission rule is not invoked because the alleged silence occurred pre-arrest. We disagree.

¶ 7 In *Bolus, supra*, the appellant, Robert C. Bolus, argued that trial counsel was ineffective for failing to object to questions regarding his pre-arrest failure to cooperate in the police investigation. The Supreme Court of Pennsylvania held "that when a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States [Constitution] nor the Pennsylvania Constitution prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence. Because in the instant matter [a]ppellant [Bolus] had testified at his trial, he has waived any right to complain that the prosecutor had impermissibly commented on his pre-arrest silence." *Bolus, supra* at 114, 680 A.2d. at 844.

¶ 8 It is well established that pre-arrest silence is admissible in this Commonwealth for impeachment purposes. *Commonwealth v. Turner*, 499 Pa. 579, 582 454 A.2d 537, 539–40 (1982). In this case, unlike in *Bolus*, DiNicola did not testify at his own trial; instead, counsel called the arresting trooper as a witness and asked the trooper questions that ultimately revealed that DiNicola had asserted his right to remain silent prior to his arrest. Presently, the Pennsylvania courts have not addressed the question of whether a prosecutor may introduce evidence of a criminal defendant's pre-arrest silence when the de-

fendant does not testify at his own trial.[2] Because DiNicola did not testify at his own trial, he did not waive his right to remain silent; therefore, we find that DiNicola's assertion is one of arguable merit. *Johnson, supra* at 1305.

■ ¶ 9 Next, we determine whether the course of action chosen by counsel had a reasonable basis designed to effectuate the client's interests. *Id.* DiNicola argues that "[t]here can be no logical tactical objective furthering the interests of the defendant from this prejudicial line of questioning." It is clear from the notes of testimony that trial counsel was trying to elicit evidence from the trooper that may have been favorable to DiNicola. When trial counsel asked, "[n]othing here—nothing whatsoever was investigated that might be inconsistent with your theory that Dave DiNicola is guilty here...", it is clear that trial counsel was attempting to obtain evidence that may have proven DiNicola's innocence. Because counsel was asking the trooper questions that were designed to effectuate DiNicola's interest and because counsel did not ask the trooper questions that revealed DiNicola had asserted his right to remain silent, we find that counsel's course of action had a reasonable basis. *Johnson, supra* at 1305.

■ ¶ 10 Additionally, DiNicola argues that trial counsel was ineffective when, on cross-examination, trial counsel did not object to similar questions asked by the Commonwealth that ultimately revealed that trial counsel had advised DiNicola to remain silent. The United States Supreme Court has expressly declined to address whether the Fifth Amendment right against self-incrimination prohibits a prosecutor from using evidence of a non-testi-

---

**2.** In *Bolus, supra* at 113, 680 A.2d at 844, the Pennsylvania Supreme Court opined that:

> [w]e leave for another day the question of whether a prosecutor may introduce evidence of a criminal defendant's pre-arrest silence when the defendant exercises his constitutional right to remain silent and does not testify at his own trial. Thus, we

need not address the rationale espoused by the Superior Court and adopted by the Commonwealth that the rights guaranteed by Article 1, section 9 of the Pennsylvania Constitution attach only when a criminal defendant is the focus of a criminal investigation or under investigation.

fying defendant's pre-arrest silence in its case-in-chief. *See Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) ("[T]he use of a defendant's pre-arrest silence to impeach his testimony at trial did not improperly burden his Fifth Amendment right to remain silent."). Because the Pennsylvania courts have not addressed the issue of the admissibility of pre-arrest silence when the defendant does not testify at his own trial, we turn to other jurisdictions for guidance.

¶ 11 In *State of New Jersey v. Marshall*, 260 N.J.Super. 591, 617 A.2d 302 (1992), the defendant was convicted of second-degree conspiracy to rob following a jury trial. During the assistant prosecutor's summation, he argued to the jury that the defendant, who did not testify at trial, demonstrated his guilt by failing to report the robbery to the defendant's employer. The New Jersey Superior Court found that "realistically, the assistant prosecutor was arguing that if he were innocent, [the] defendant ultimately would have reported the robbery to the police who were investigating the crime." *Marshall, supra* at 595, 617 A.2d 302. The court concluded that:

> A jury may consider a defendant's pre-arrest silence only to affect his credibility and even then only when the trial judge first rules that defendant's silence may reasonably be viewed as inconsistent with his testimony. Here, defendant did not testify so the assistant prosecutor should not have asked the jury to consider his pre-arrest silence for any purpose.

*Id.* at 598, 617 A.2d 302.

¶ 12 The New York Supreme Court set forth a similar holding in *The People v. Gluckowski*, 174 A.D.2d 752, 571 N.Y.S.2d 336 (1991). Defendant Gluckowski was convicted of manslaughter in the second degree after a jury determined that Gluck-

owski had stabbed his girlfriend to death in his basement apartment. On appeal, Gluckowski argued that the hearing court improperly permitted the Assistant District Attorney to refer to his pre-arrest silence during the trial. Prior to Gluckowski's arrest but while he was still in his apartment, his mother made a statement in the presence of police officers, that "my son, Michael, killed her," to which Gluckowski offered no response. The Supreme Court of New York held that:

> It is well established that a defendant has the constitutional right to remain silent at the time of his arrest (N.Y. Const, art. I, § 6; U.S. Const. 5th Amend.), and his silence at or after his arrest cannot be used by the People as part of their direct case (*See People v. DeGeorge*, 73 N.Y.2d 614, 620, 543 N.Y.S.2d 11, 541 N.E.2d 11: *People v. Rothschild*, 35 N.Y.2d 355, 359, 361 N.Y.S.2d 901, 320 N.E.2d 639). In *People v. DeGeorge (supra)*, decided subsequent to the hearing court's determination, the Court of Appeals further determined that the use of defendant's pre-arrest silence for impeachment purposes or as direct evidence of guilt, is violative of this State's common-law rules of evidence (*People v. DeGeorge, supra*, at 618–19, 543 N.Y.S.2d 11, 541 N.E.2d 11). Accordingly, and contrary to the People's contentions, the defendant's pre-arrest silence was improperly admitted as part of the People's direct case.[3]

*Gluckowski, supra* at 337.

■ ¶ 13 We find the foregoing holdings of the appellate courts of our sister states instructive. We, therefore, adopt their holding that a defendant's pre-arrest silence may not be admitted into evidence when the defendant does not testify at his own trial. *Marshall, supra* at 598, 617 A.2d 302; *Gluckowski, supra* at 337. In

---

3. The Supreme Court of New York determined that even though Gluckowski's "... pre-arrest silence was improperly admitted as part of the People's direct case ... the forego-

ing evidentiary error was harmless beyond a reasonable doubt in view of the overwhelming evidence of the defendant's guilt." *Gluckowski, supra* at 337.

the present case, DiNicola did not testify at his own trial and therefore he did not waive his Fifth Amendment right. Furthermore, it is well-settled law "that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt." *Commonwealth v. Turner*, 499 Pa. 579, 582–83, 454 A.2d 537 (1982).

¶ 14 We find merit in DiNicola's claim that trial counsel was ineffective when, on cross-examination, he did not object to questions asked by the Commonwealth that revealed that DiNicola wished to speak with his attorney. The prejudice resulting from reference to DiNicola's silence is substantial. However, even though his claim has merit, we are unable to determine what counsel's basis was when he did not object to the prosecutor's reference to DiNicola's pre-arrest silence. Because the record is inadequate to enable us to resolve this claim, we find it necessary to remand for an evidentiary hearing to determine whether trial counsel had any reasonable basis designed to effectuate his client's interests when he did not object to the prosecutor's line of questioning. *Johnson, supra* at 1305.

¶ 15 Case remanded for ineffectiveness hearing. Jurisdiction relinquished.