J-S47012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| OMAR D. DIAZ-PERDOMO, | |
| Appellant | No. 2116 MDA 2015 |

Appeal from the PCRA Order November 13, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001103-2012

BEFORE: SHOGAN, LAZARUS, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 15, 2016**

Appellant, Omar D. Diaz-Perdomo, appeals from the November 13, 2015 order, dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After careful review, we reverse the order denying PCRA relief, vacate the judgment of sentence, and remand for resentencing.

The PCRA court summarized the salient procedural history as follows:

> [Appellant] was charged with Possession with Intent to Deliver a Controlled Substance (Count 1-morphine sulfate pills), two counts of Possession of a Controlled Substance (Count 2-morphine sulfate pills and Count 3-cocaine) and Possession of Drug Paraphernalia (Count 4-plastic straw). The drugs and paraphernalia were found during searches conducted at the scene of [Appellant's] arrest, at Central Booking, and at [Appellant's] residence on April 19, 2012. After a jury trial on April 3, 2013, [Appellant] was convicted of all charges. He was sentenced to an aggregate term of thirty-nine to seventy-eight months in a state correctional institution on June 12, 2013. Post-Sentence Motions were denied by Order of October 22,

2013 and the Pennsylvania Superior Court affirmed on August 15, 2014.

On October 27, 2014, [Appellant] filed a Petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq*. After PCRA counsel was appointed, he filed an Amended Petition on February 2, 2015 and a Second Amended Petition on April 8, 2015. [Appellant] asserts ineffective assistance of counsel on the part of his trial counsel and also assigns error to our failure to appoint conflict counsel to represent him due to his problems in his dealings with trial counsel. We conducted a hearing on June 25, 2015, both parties have submitted Briefs, and the matter is now before us for resolution.

PCRA Court Opinion, 11/13/15, at 1–2 (footnote omitted).

The PCRA court denied Appellant's request for collateral relief on November 13, 2015. Appellant filed a notice of appeal to this Court on December 4, 2015, and complied with the PCRA court's order to file a Pa.R.A.P 1925(b) concise statement of errors complained of on appeal. Concluding that "the issues raised by [Appellant] have been previously addressed in [its] Order and Opinion dated November 13, 2015," the PCRA court directed the Lebanon County Clerk of Courts to transmit the record to this Court. Order, 12/22/15.

Appellant raises numerous questions for our review, nine challenging trial counsel's representation and one issue concerning the trial court's refusal to appoint conflict counsel:

1. Whether Trial Counsel was ineffective for failing to introduce evidence regarding Appellant's employment so as to rebut the Commonwealth's implications that Appellant was selling drugs?

2. Whether Trial Counsel was ineffective for failing to timely request the video footage of Central Booking so as to

- 2 -

rebut the Commonwealth's witnesses' testimonies regarding the money found in Appellant's possession?

3. Whether Trial Counsel was ineffective for failing to consult with Appellant [about] the video footage of the police car at the time of Appellant's arrest so as to rebut Commonwealth's witnesses' testimonies regarding the money found in Appellant's possession?

4. Whether Trial Counsel was ineffective for failing to obtain and thereby present Appellant's home and job plan to rebut Parole Officer Thomas's and Detective Sergeant Radwanski's testimonies that Appellant resided in a halfway house, and worked a part-time, minimum-waged job?

5. Whether Trial Counsel was ineffective for failing to obtain and thereby present evidence to show that Appellant had not patronized the bar, consumed alcohol, or spoke on a cell phone prior to his being searched, where such evidence should have been used to impeach Parole Officer Thomas's credibility?

6. Whether Trial Counsel was ineffective for failing to argue, on direct appeal, that Appellant's verdict of Possession with Intent to Deliver was against the weight of the evidence presented at Trial, where Commonwealth witnesses gave contradictory testimonies?

7. Whether Trial Counsel was ineffective for failing to introduce evidence that the morphine pills that were allegedly in Appellant's possession at the time in which Appellant was searched was small in quantity, and therefore, could not sufficiently prove Appellant guilty of Possession with Intent to Deliver beyond a reasonable doubt?

8. Whether Trial Counsel was ineffective for failing to object to Parole Officer Thomas's comment that Appellant had a history with the Parole Board, where such comment ultimately prejudiced Appellant?

9. Whether Trial Counsel was ineffective for failing to subpoena and thereby present the parole/probation logs from Parole Officer Thomas, where such evidence should have been used to impeach Parole Officer Thomas's testimony that he had not been at Central Booking?

10. Whether Trial Court erred when it failed to appoint conflict counsel, where the Court was aware that there was a breakdown in communication between Trial Counsel and Appellant?

Appellant's Brief at 4–7.

Our standard of review of an order denying PCRA relief is well settled:

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Ruiz*, 131 A.3d 54, 57 (Pa. Super. 2015) (quoting *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (internal citations omitted)). Additionally, to establish a claim of counsel's ineffectiveness, a petitioner is required to plead and prove: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. If a petitioner fails to plead or meet any elements of the above-cited test, his claim must fail." *Commonwealth v. Ford*, 44 A.3d 1190, 1194–1195 (Pa. Super. 2012) (quoting *Commonwealth v. Burkett*, 5 A.3d 1260, 1271–1272 (Pa. Super. 2010) (internal citations and quotations omitted)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, we conclude that Appellant's ineffective representation issues merit no relief. As

detailed below, the November 13, 2015 PCRA court opinion comprehensively discusses and properly disposes of those questions.

The PCRA court first decided that trial counsel provided effective assistance in regard to counsel's approach to the Commonwealth's evidence of Appellant's employment status. Appellant claimed that he provided trial counsel with a letter indicating that he was a full-time employee in contradiction to Commonwealth testimony that he only worked part-time. The PCRA court concluded that Appellant failed to substantiate the claim that he provided counsel with a letter verifying his full-time employment; instead, it credited trial counsel's testimony at the PCRA hearing that he did not challenge the Commonwealth's testimony concerning Appellant's employment status because that evidence was consistent with what Appellant told counsel and what was presented to the jury. PCRA Court Opinion, 11/13/15, at 6–7.

Second, the PCRA court determined ineffective assistance did not result from trial counsel's efforts in attempting to obtain (from Central Booking) and in obtaining (police vehicle) video footage that Appellant claimed would rebut the Commonwealth's witnesses' testimony regarding money found in Appellant's possession. Appellant avers that the money was taken from him during a search performed by Lebanon City Police Officer Adam Rusz at the arrest scene. However, Appellant contends that Officer Rusz's police report states the money was found at Central Booking

while that same officer's inventory report relates that the money was found at the scene. Noting this discrepancy, on January 22, 2013, Appellant requested trial counsel to obtain the video footage from Central Booking for the date of his arrest, April 19, 2012. Trial counsel submitted a request for the footage by email to the Lebanon County District Attorney on February 1, 2013. The District Attorney responded that the Central Booking video footage is retained only for thirty days and that the footage requested no longer existed. Trial counsel was able to obtain the in-car video footage of Appellant in the city police vehicle, but it did not include footage of activity occurring outside of the vehicle. N.T., 6/25/15, at 33–36. Appellant asserts that trial counsel was ineffective by virtue of his failure to timely request the Central Booking video footage and then to utilize it to cast doubt on the credibility of the law enforcement officer's testimony concerning the money confiscated from Appellant.

In addition to finding that trial counsel attempted to comply with Appellant's request for the Central Booking video footage and should not be faulted for its unavailability, the PCRA court also concluded Appellant did not demonstrate any prejudice resulting from trial counsel's actions with regard to the videos. The PCRA court observed:

> [Appellant] did not dispute that he was in possession of this money. Even if the footage had shown what [Appellant] claimed, the location where that money was found, and Officer Thomas's presence at Central Booking are inconsequential facts which would have had no bearing on the jury's verdict. Such facts had no relevance to the elements of [Appellant's] charges

and, even if proven, would not have negated the facts relevant to the Commonwealth's proof of those elements. We believe the jury would have found them to be minor details which would not have had any impact on the credibility attributed to these two witnesses. Trial counsel was able to obtain the police vehicle footage and gave [Appellant] an opportunity to view it. [Appellant] agreed that it showed nothing of the search conducted at the scene at Ninth and Mifflin Streets. He has identified nothing which would have been helpful to his case and trial counsel cannot be faulted for failing to present irrelevant evidence at trial.

PCRA Court Opinion, 11/13/15, at 9–10.[1]

The PCRA court next dismissed Appellant's fourth claim that trial counsel was ineffective for failing to procure and present documents from Appellant's home and job plan that Appellant proposed would shed light on his employment status and his place of residence and contradict testimony presented by the Commonwealth's witnesses. The PCRA court credited trial counsel's explanation that the subject records would not have been helpful to the defense and that counsel "did not want to 'open the door' to [Appellant's] supervision history as he had a number of previous [parole] violations and was behind in the payment of his fines and costs." PCRA Court Opinion, 11/13/15, at 12. Trial counsel also explained that he "feared that [these records] might suggest to the jury that [Appellant] did not have

_____

[1] Appellant's third issue is that trial counsel was ineffective by failing to consult with Appellant about the video footage from the police car. Appellant does not develop this argument nor could it have merit in that trial counsel did obtain that video footage and showed it to Appellant. N.T., 6/25/15, at 10.

- 7 -

the money for these payments and had been selling drugs because he needed cash." **Id.** at 13. The PCRA court found "no error of judgment on the part of trial counsel in his attempt to minimize any potential prejudice posed by [Appellant's] supervision history." **Id**.

Appellant's fifth allegation is that trial counsel was ineffective for failing to obtain and present certain evidence that would rebut the Commonwealth's testimony that Appellant was patronizing a bar, had consumed alcohol, or had spoken on a cell phone prior to his being stopped and searched by Parole Officer Ralph Thomas, where such evidence should have been used to impeach Parole Officer Thomas's credibility. The PCRA court summarized and resolved this issue as follows:

> [Appellant] further claims that he was not using a cellphone prior to being approached by Officer Thomas, that he had not been inside the Liberty Bar, and that he had not consumed any alcohol prior to his arrest. He complains that trial counsel failed to conduct an investigation regarding these facts and failed to "ask the right questions" of Officer Thomas and Officer Rusz regarding these matters in order to show their lack of credibility. He asserts that trial counsel should have questioned these witnesses as to why no cellphone was introduced as evidence and why there had been no blood or urine tests to determine whether [Appellant] had consumed alcohol. [Appellant] wanted these subjects brought up during trial so that the jury could "know exactly what happened." (N.T. 6/25/15 at 25) However, he could not recall whether he even requested trial counsel to conduct such an investigation. He also admitted that he knew of no witnesses who could have testified to these facts and had no other evidence to demonstrate that his version of the facts was accurate.
>
> Trial counsel noted that he did refer to the Commonwealth's failure to produce a cellphone during his closing argument. He further explained that he could not follow

- 8 -

up on these matters because [Appellant] could not give him the names of any witnesses. He also did not want to go too much into what was going on at the scene because the police report had indicated that another individual was with [Appellant] when he was first observed by Officer Thomas. As Officer Thomas approached, [Appellant] kicked something that looked like drugs to that individual, and that individual picked up the item and ran into a building. Trial counsel was concerned that if he went into what was going on outside the bar, this would come up and it would suggest to the jury that [Appellant] had been selling drugs. We believe that this was a reasonable basis for trial counsel to avoid bringing up matters from the scene which would not have been helpful to [Appellant] in the long run.

PCRA Court Opinion, 11/13/15, at 10–11.

Next, contrary to the argument raised in Appellant's sixth appellate issue, the PCRA court concluded that trial counsel acted reasonably when he did not pursue a weight to the evidence challenge in the post-sentence motion filed on Appellant's behalf. The PCRA court reviewed trial counsel's testimony at the PCRA hearing describing counsel's evaluation of a possible weight of the evidence issue and agreed that such an argument would be unavailing. The PCRA court noted:

Trial counsel explained that he saw no merit in including a challenge to the weight of the evidence because the determination of what credibility to give to the testimony of these two witnesses was for the jury and he saw no chance that such an argument would be successful. After reviewing the transcript of the jury trial, we agree with trial counsel that this argument would have been unsuccessful and that he was not required to pursue a meritless avenue at the post-sentence stage of these proceedings. The claimed inconsistencies were of insignificant matters and were irrelevant to the elements of the offenses with which [Appellant] was charged. We find nothing that would indicate lack of credibility on any of the Commonwealth witnesses to such a degree that their testimony

- 9 -

should not have been given the credibility attributed to it by the jury.

PCRA Court Opinion, 11/13/15, at 17–18.

Appellant's seventh assertion of ineffective representation concerns trial counsel's failure to introduce evidence that the small amount of morphine pills (thirty-six pills) found in his possession was not consistent with a possession with intent to deliver offense. The PCRA court rejected this allegation of ineffectiveness, reasoning:

> At the PCRA hearing, [Appellant] gave confusing testimony in this regard. [Appellant] acknowledged that he did not request trial counsel to present any evidence that the pills were for personal use. [Appellant] insisted that he had a prescription, but claimed that he did not tell trial counsel why he had the pills in his possession because he had already told prison officials that he was not using any drugs in his intake form. In the next breath, however, he testified that he told trial counsel that he was taking the pills for leg pain and was not selling them.
>
> [Appellant] admitted that the only evidence which could have been presented on this issue was his own testimony. However, on the morning of trial, [Appellant] told both trial counsel and the Trial Judge that he would not testify[.]
>
> * * *
>
> Trial counsel testified [Appellant] had acknowledged to him that he was using the morphine pills, and had told him they were in his possession for his personal use. However, [Appellant] did not tell trial counsel that he was using the pills for pain. If [Appellant] had told him that he was using them for pain, trial counsel would have followed up to obtain evidence of his medical condition and the details of his treatment.
>
> Trial counsel also explained that he had defended felony drug cases in the past and was familiar with presenting defenses in such cases. He was familiar with Sergeant Radwanski, the Commonwealth's expert on possession with intent to deliver, and had dealt with him in his past cases. Trial counsel conducted

- 10 -

extensive questioning of Sergeant Radwanski regarding the factors relevant to a possession with intent to deliver case and felt that he asked all questions pertinent to the defense of this charge.

We agree with the Commonwealth that [Appellant] cannot now complain that no evidence was presented to support his position that he was in possession of the morphine pills for personal use due to pain when he provided trial counsel with no information regarding this issue prior to trial. Moreover, although [Appellant] had the absolute right to decline the opportunity to testify on his own behalf at trial, he admitted that this was the only evidence available on this point.

PCRA Court Opinion, 11/13/15, at 13–16 (record references omitted).

The PCRA court additionally observed that its review of the trial transcript revealed that:

trial counsel conducted a rigorous cross-examination of Sergeant Radwinski regarding his opinion. Trial counsel asked numerous questions regarding the money in [Appellant's] possession, the prison intake form, the way in which the pills were packaged, the lack of necessity of paraphernalia for ingesting such pills, and other issues which would have been relevant to the issue of an intent to distribute. We find nothing more that he could have done under the circumstances.

PCRA Court Opinion, 11/13/15, at 17.

Appellant's eighth argument is that trial counsel was ineffective for failing to object to Parole Officer Thomas's comment at trial that Appellant had a history with the Parole Board because such comment unduly prejudiced Appellant in the eyes of the jury. The PCRA court did not find this allegation of ineffectiveness to be meritorious:

At the jury trial, Officer Thomas had noted that [Appellant] was on state parole at the time and was not permitted to be in an establishment that sells alcohol. In addition, Officer Thomas also

- 11 -

indicated that he would be familiar with the home address of a supervisee. [Appellant] claims that this testimony implied that Officer Thomas was familiar with [Appellant] because he was on supervision, thereby causing prejudice in the eyes of the jury.

Trial counsel explained that this testimony was offered by the Commonwealth as an explanation for why Officer Thomas was making contact with [Appellant]. Trial counsel knew that under the circumstances of the case, there would be no way to avoid the subject of [Appellant's] supervision. He believed that the jury was well aware that [Appellant] was on state parole at the time because he was detained by a state parole officer. Since there was no way to avoid this subject, he did not object. We find it highly doubtful that the jury would have reached a different verdict had it not known this information.

PCRA Court Opinion, 11/13/15, at 11–12 (record reference omitted).

Appellant's last complaint concerning trial counsel's representation is that counsel was ineffective for failing to subpoena Parole Officer Thomas's parole logs to impeach the officer's testimony that he was present when Appellant was brought to Central Booking. While the PCRA court did not specifically address whether trial counsel should have subpoenaed these documents, it did determine that:

Officer Thomas's presence at Central Booking [is an] inconsequential fact[] which would have had no bearing on the jury's verdict. Such fact[] ha[s] no relevance to the elements of [Appellant's] charges and, even if proven, would not have negated the facts relevant to the Commonwealth's proof of those elements. We believe the jury would have found [it] to be [a] minor detail[] which would not have had any impact on the credibility attributed to [Officer Thomas].

PCRA Court Opinion, 11/13/15, at 9. The PCRA court thus concluded that Appellant did not suffer any prejudice by trial counsel's failure to contest the fact of Officer Thomas's presence at Central Booking. *Id*.

Appellant's final issue is that the trial court erred when it failed to appoint conflict counsel when the court became aware that there was a breakdown in communication between Appellant and trial counsel. This assertion of error is not cognizable in this proceeding. To be eligible for PCRA relief, a petitioner must demonstrate that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). Under 42 Pa.C.S. § 9544(b), "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." The PCRA court found that Appellant "made no mention of any complaint regarding trial counsel throughout the pretrial period, at the time of the jury trial, or in post-sentence proceedings." PCRA Court Opinion, 11/13/15, at 20. Nor did Appellant raise the conflict counsel issue in his direct appeal. *See* Appellant's Pa.R.A.P. 1925(b) statement, 12/11/13, at 1 (claiming error in the trial court's denial of his pretrial motion to suppress and challenging the sufficiency of the evidence to support his conviction for possession with intent to distribute). Thus, this claim is waived for appellate review. *Commonwealth v. Bond*, 819 A.2d 33, 39 (Pa. 2002) ("[C]laims that could have been raised on direct appeal but were not are waived under the PCRA.").

To summarize, the PCRA court's opinion thoroughly and cogently addressed each allegation of ineffectiveness. The record supports the PCRA

court's determinations, and the PCRA court's decision is free of legal error. Additionally and remarkably, Appellant does not challenge any of the PCRA court's factual findings or claim that the PCRA court's legal conclusion are erroneous. For these reasons, as to the nine claims of ineffective assistance of counsel, we affirm on the basis of the PCRA court's November 13, 2015 opinion and adopt it as our own. Accordingly, we direct the parties to include the PCRA court's opinion in all future filings relating to our examination of the merits of this appeal. Furthermore, Appellant's claim that the trial court erred when it denied his request to appoint conflict counsel is waived. **See** 42 Pa.C.S. § 9544(b) (for purposes of collateral relief, issue is waived if the petitioner could have previously raised the issue but failed to do so).

These conclusions, however, do not discharge our appellate obligation in this matter. In his appellate brief, albeit in a footnote, Appellant, for the first time, challenges the legality of his sentence under **Alleyne v. United States**, 133 S.Ct. 2151 (2013). While ordinarily Appellant's effort to raise an issue for review that was not included in his Pa.R.A.P. 1925(b) statements, either in his direct appeal or his present appeal from denial of PCRA relief, would be unsuccessful and subject to waiver, an **Alleyne** claim is a non-waivable challenge to the legality of sentence, which is cognizable under the PCRA. **See Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) (an **Alleyne** challenge to a sentence implicates the

legality of the sentence and such a challenge cannot be waived).[2]  **But see**

**Commonwealth v. Miller,** 102 A.3d 988 (Pa. Super. 2014) (**Alleyne** does

not invalidate a mandatory minimum sentence when presented in an

untimely PCRA petition).  We will, therefore, address whether Appellant's

legality of sentence challenge is cognizable in light of the procedural posture

in which the claim was raised.

At the time Appellant was sentenced, 18 Pa.C.S. § 6317(a) imposed a

mandatory minimum sentence of two years of confinement upon a

defendant for, *inter alia*, a conviction of possession with intent to deliver, 35

P.S. § 780-113(a)(30), if the possession with intent to deliver a controlled

substance occurred within 1,000 feet of a school.  Additionally, section

6317(b) instructed that "the provisions of this section shall not be an

element of the crime" and the applicability of the statute shall be determined

at sentencing by a "preponderance of the evidence."  18 Pa.C.S. § 6317(b).

In **Alleyne**, the United States Supreme Court held that "[a]ny fact

that, by law, increases the penalty for a crime is an 'element' that must be

submitted to the jury and found beyond a reasonable doubt."  **Alleyne**, 133

S.Ct. at 2155 (citation omitted).  Three years later, in **Commonwealth v.**

---

[2]  On September 18, 2015, the Pennsylvania Supreme Court granted the petition for allowance of appeal in **Commonwealth v. Barnes**, 350 EAL 2014, 122 A.3d 1034 (2015) (*per curiam*), to address the question of whether an **Alleyne** violation implicates the legality of a sentence and thus renders a challenge non-waivable.

*Hopkins*, 117 A.3d 247 (Pa. 2015), the Pennsylvania Supreme Court applied the *Alleyne* mandate and held that the mandatory minimum sentencing scheme set forth in 18 Pa.C.S. § 6317 was unconstitutional in its entirety. *Hopkins*, 117 A.3d at 262.

In *Commonwealth v. Ruiz*, 131 A.3d 54, 57 (Pa. Super. 2015), this Court reiterated its prior declarations in *Newman* that: (1) an *Alleyne* claim is a non-waivable challenge to the legality of sentence; and (2) *Alleyne* announced a new constitutional rule that applied to all cases pending on direct review when *Alleyne* was decided. *Ruiz,* 131 A.3d at 59–60 (citing *Newman*, 99 A.3d at 90). Based on those premises, *Ruiz* held that a defendant could raise an *Alleyne* challenge in a timely PCRA petition so long as his direct appeal from the judgment of sentence was still pending when *Alleyne* was decided. *Ruiz*, 131 A.3d at 60.

Recently, in *Commonwealth v. Washington*, ___ A.3d ___, 2016 WL 3909088 (Pa. filed July 19, 2016), the Pennsylvania Supreme Court addressed an *Alleyne* claim raised in a timely PCRA petition where the judgment of sentence **had become final** prior to the *Alleyne* decision. In doing so, the Court stated:

> [A] new rule of law does not automatically render **final**, **pre-existing** sentences illegal. A finding of illegality concerning such sentences may be premised on such a rule only to the degree that the new rule applies retrospectively. In other words, if the rule simply does not pertain to a particular conviction or sentence, it cannot operate to render that conviction or sentence illegal. . . .

- 16 -

* * *

[N]ew constitutional procedural rules generally pertain to future cases and matters that are pending on direct review at the time of the rule's announcement.

*Id.* at \*3-4 (emphasis added). *See also id.* at \*4 (stating: "[I]f a new constitutional rule does not apply, it cannot render an otherwise final sentence illegal"). The *Washington* Court applied the retroactivity analysis delineated in *Teague v. Lane*, 489 U.S. 288 (1989), and determined the new constitutional rule announced in *Alleyne* is not a substantive or watershed procedural rule that would warrant retroactive application. *Washington*, *id.* at \*7. The Court held the defendant was not entitled to retroactive application of *Alleyne* because his judgment of sentence became final before Alleyne was decided. *Id.*

Here, Appellant's judgment of sentence **had not become final** prior to the *Alleyne* decision, thus *Washington* is distinguishable. Appellant's sentencing proceeding was held on June 12, 2013. At the hearing, the sentencing court determined that the school zone sentencing enhancement then codified at 18 Pa.C.S. § 6317 applied. N.T. (Sentencing), 6/12/13, at 19. Appellant was then sentenced to an aggregate term of thirty-nine to seventy-eight months of incarceration.

On June 17, 2013, three days after Appellant's sentence was imposed, the United States Supreme Court issued its decision in *Alleyne*. Appellant timely filed a post-sentence motion which the trial court denied on

- 17 -

October 22, 2013. Appellant filed a timely direct appeal on November 23, 2013. Appellant, however, did not present an *Alleyne* challenge in these pleadings; nor did the panel of this Court raise it *sua sponte* in its decision affirming Appellant's judgment of sentence. *See Commonwealth v. Diaz-Perdomo*, 106 A.3d 162, No. 2108 MDA 2013 (Pa. Super. filed August 15, 2014) (unpublished memorandum). Appellant did not petition the Pennsylvania Supreme Court for review; accordingly, his judgment of sentence became final on September 15, 2014.[3] *See* 42 Pa.C.S. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Accordingly, because Appellant's judgment of sentence was pending when *Alleyne* was decided, under *Ruiz*, *Alleyne* applies and Appellant is entitled to review and relief. *See also Hopkins*, 117 A.3d at 262.

Based on the foregoing, we conclude Appellant is entitled to a remand for resentencing without application of any unlawful mandatory minimum statute. Accordingly, we reverse the order denying PCRA relief, vacate the judgment of sentence, and remand for resentencing without imposition of

_____

[3] The thirtieth day, September 14, 2014, fell on a Sunday. Therefore, Appellant's judgment of sentence became final on Monday, September 15, 2014. *See* 1 Pa.C.S. § 1908.

- 18 -

the mandatory minimum term. *See Commonwealth v. Bartrug*, 732 A.2d 1287 (Pa. Super. 1999) (holding sentencing error in multi-count case normally requires appellate court to vacate entire judgment of sentence so trial court can restructure its sentencing scheme on remand).

Order reversed; judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2016

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY 2015 NOV 13 PM 3 32
PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     NO. CP-3CR-1103-2012

       : 

      v.              : 

       : 

OMAR D. DIAZ-PERDOMO        : 

**APPEARANCES:**

**NICHOLE EISENHART, ESQUIRE**       **FOR THE COMMONWEALTH**
**ASSISTANT DISTRICT ATTORNEY**

**ERIN ZIMMERER, ESQUIRE**       **FOR OMAR D. DIAZ-PERDOMO**
**MONTGOMERY & ZIMMERER, LLC**

**OPINION, TYLWALK, P.J., NOVEMBER 13, 2015.**

Defendant was charged with Possession with Intent to Deliver a Controlled

Substance (Count 1 – morphine sulfate pills), two counts of Possession of a

Controlled Substance (Count 2 – morphine sulfate pills and Count 3 – cocaine)

and Possession of Drug Paraphernalia (Count 4 – plastic straw).[1] The drugs and

paraphernalia were found during searches conducted at the scene of Defendant's

arrest, at Central Booking, and at Defendant's residence on April 19, 2012. After a

---

[1] 35 P.S. §780-113(a)(30), 35 P.S. §780-113(a)(16) and 35 P.S. §780-113(a)(32), respectively.

1

jury trial on April 3, 2013, Defendant was convicted of all charges. He was sentenced to an aggregate term of thirty-nine to seventy-eight months in a state correctional institution on June 12, 2013. Post-Sentence Motions were denied by Order of October 22, 2013 and the Pennsylvania Superior Court affirmed on August 15, 2014.

On October 27, 2014, Defendant filed a Petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.* After PCRA counsel was appointed, he filed an Amended Petition on February 2, 2015 and a Second Amended Petition on April 8, 2015. Defendant asserts ineffective assistance of counsel on the part of his trial counsel and also assigns error to our failure to appoint conflict counsel to represent him due to his problems in his dealings with trial counsel. We conducted a hearing on June 25, 2015, both parties have submitted Briefs, and the matter is now before us for resolution.

To prevail on a claim of ineffectiveness of counsel, a defendant must show that his claim was of arguable merit, there was no reasonable basis for counsel's conduct, and counsel's conduct prejudiced the defendant. *Commonwealth v. Johnson,* 874 A.2d 66, 73 (Pa. Super. 2005). If a defendant fails to satisfy any prongs of the test, he is not entitled to relief. *Commonwealth v. Natividad,* 938 A.2d 310 (Pa. 2007). If the defendant fails to demonstrate that the underlying

2

claim is of arguable merit, the ineffectiveness claim may be dismissed on that ground alone and it is not necessary to consider the other two factors. *Commonwealth v. DiNicola,* 751 A.2d 197, 198 (Pa. Super. 2000). If a defendant fails to demonstrate that he was prejudiced by counsel's actions, the ineffectiveness claim may be dismissed on that ground alone and it is not necessary to consider the first two factors. *Commonwealth v. Saranchak,* 866 A.2d 292, 300 (Pa. 2005). Counsel's actions will not be found to have lacked a reasonable basis unless the petitioner establishes that an alternative not chosen by counsel offered a potential for success substantially greater than the course pursued. *Id.* Prejudice means that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.*

We have previously summarized the facts underlying Defendant's charges:

On April 19, 2012, at approximately 8:00 p.m. (State Parole Officer) Thomas observed Defendant standing on the front steps of the Liberty Bar talking on a cellphone. Defendant's conditions of parole supervision prohibit the consumption of alcohol. ... Thomas knew the Liberty Bar to be an establishment which serves alcohol and which is well-known for drug-trafficking location. Thomas had previously supervised Defendant on parole and during that time had searched him and found that he possessed controlled substances. In addition, Thomas noted that Defendant's criminal history contained five convictions for felony drug offenses dating back to the 1980's.

3

Defendant remained on the steps while Thomas parked his vehicle. As Thomas approached the bar, Defendant began to walk toward Thomas. Thomas detected the odor of alcohol coming from Defendant's person. Defendant did not appear visibly intoxicated to Thomas. Thomas ordered Defendant to place his hands on the wall of the bar and conducted a search of his body. A bag of pills and a roll of money was found in Defendant's right-front pocket. Thomas also confiscated the keys to Defendant's residence. When Thomas attempted to search Defendant's left-front pocket, he resisted and Thomas called for backup. Two officers responded to his call and Defendant was taken into custody. Thomas testified that he had conducted the search to ensure Defendant's compliance with his conditions of supervision.

Thomas testified that he lodged a parole detainer on Defendant based on the contraband obtained during the search of his person. When Defendant was taken to Central Booking, he was searched a second time. That search resulted in confiscation of $280.70, a small plastic straw and two small plastic bags containing a white powdery substance. Once he was arrested, Defendant asked to make a phone call and indicated that there were items which he wanted to have removed from his apartment. Thomas and one of the other officers then used the key taken from Defendant to enter and search Defendant's residence in order to find additional evidence of drug possession or sales. No search warrant was obtained prior to the search of the residence. That search yielded $800.00.

(Slip Opinion dated December 18, 2012 at 2 – 4).

At Defendant's jury trial, the Commonwealth presented testimony as to the amount of cash in Defendant's possession at the time of his arrest. This evidence was directed to the allegation that Defendant was involved in the sale of controlled substances (the morphine pills). The cash referred to was the $280.70 found on Defendant's person and the $800.00 found in his residence. Defendant

4

claims that the money was unrelated to any drug activity and that he was in possession of the cash because he was working full-time at Triangle Car Wash at the time and had just received his pay. At the jury trial, Officer Thomas testified that Defendant was employed part-time at the Car Wash earning $8.00 per hour. Defendant complains that trial counsel offered no contradictory evidence as to Defendant's employment status at the trial.

At the PCRA hearing, Defendant testified that prior to the jury trial, he had obtained a letter from his employer which indicated his employment status as "full-time." Defendant insisted that prior to trial, he had sent a letter informing trial counsel that he had this letter and that he asked him to use it to refute the Commonwealth's evidence with regard to his employment status. He claims that he had also requested trial counsel to obtain his employment records for use at trial. At the PCRA hearing, Defendant did not present the letter nor did he identify any witnesses who could have testified as to his employment status at the jury trial.

Trial counsel testified that he could not recall having received any letter about Defendant's employment status from Defendant prior to the trial, and that the PCRA hearing was the first time he was hearing about it. Trial counsel checked his file, and although it contained the other letters he had received from

5

Defendant, it did not contain the one referred to by Defendant. Trial counsel recalled that Defendant had told him that he was working full-time; however, when defining his work hours, Defendant had explained that he only worked "on and off." Trial counsel explained that he did not delve any further into the subject of Defendant's employment status at trial because the Commonwealth's testimony was consistent with the information he had been given by Defendant. Trial counsel explained that if he had any other information about Defendant's employment, he would have discussed the subject with Defendant prior to trial. However, based on the information given to him by Defendant, he was not made aware of any additional relevant information regarding Defendant's employment which would warrant further investigation or clarification.

We find no merit to this argument as we believe trial counsel acted reasonably under the circumstances. He had no reason to question or conduct any pretrial investigation as a result of the information given to him by Defendant. He also had no reason to believe that there was a need to challenge the Commonwealth's evidence regarding Defendant's employment status as that evidence was consistent with what he had been told by Defendant. In fact, he did bring up the fact that Defendant received tips in addition to his hourly wage at his employment. (N.T. 6/25/15 at 24) The jury was given the same information

6

about Defendant's work hours and wages as Defendant gave to trial counsel. At the PCRA hearing, Defendant did not present any evidence of the letter he allegedly sent to trial counsel, the letter regarding his employment status, or any other documentation or witnesses to substantiate his claim. Therefore, he is not entitled to collateral relief on this basis.

Defendant next complains that Defendant failed to take various measures to attack the credibility of two Commonwealth witnesses, State Parole Officer Thomas and Adam Rusz, a Lebanon City Police Officer who responded to assist Officer Thomas at the scene. Defendant first points to a discrepancy over where the $280.70 was confiscated on the date of his arrest. Defendant contends that the money was taken from him during the search conducted by Officer Thomas at the scene at Ninth and Mifflin Streets. Officer Rusz indicated in the police report that it was found at Central Booking, while the inventory report prepared by Office Rusz states that it was found at the scene. In addition, Defendant complains that Officer Thomas testified that he was not present at Central Booking, but that he was actually present there.

Prior to the jury trial, Defendant had requested trial counsel to obtain the video footages from both the Lebanon City police vehicle and Central Booking in the hope that these videos would reveal these inconsistencies and suggest that

7

the testimony given by these two witnesses was unreliable. Trial counsel explained that nothing he had received in discovery had indicated that these items would be relevant and that he would have sought them prior to receiving Defendant's request if he had any belief that they would aid in the defense.

With regard to the footage from Central Booking, trial counsel explained that Defendant first made this request during a meeting at the Lebanon County Correctional Facility on January 22, 2013. Trial counsel submitted this request via an email to the District Attorney on February 1, 2013; however, he was informed that the footage was only kept for thirty days and that since the incident had occurred in April 2012, it had already been destroyed.

We find no fault on the part of trial counsel on this point. It was reasonable for him not to obtain the footage prior to receiving Defendant's request since his review of discovery revealed nothing to suggest that it might contain something helpful to the defense. Despite his opinion that the footage would not be relevant, trial counsel did attempt to comply with Defendant's request promptly and he cannot be faulted for its unanvailability.

Defendant had also hoped that there would be footage of the search conducted by Officer Thomas to show that the $280.70 had been found at the scene. For that reason, he had trial counsel obtain the footage from the police

vehicle which had responded to assist Officer Thomas. After viewing it, Defendant and trial counsel agreed that the footage showed only the interior of the police vehicle while Defendant was being transported from the scene to Central Booking. There was no footage of anything which occurred outside prior to Defendant being placed inside the vehicle. Since nothing occurred during the trip to Central Booking which was relevant to Defendant's case, trial counsel did not play the footage for the jury at trial.

We fail to see any prejudice suffered by Defendant by trial counsel's actions with regard to either of these videos. Defendant did not dispute that he was in possession of this money. Even if the footage had shown what Defendant claimed, the location where that money was found, and Officer Thomas's presence at Central Booking are inconsequential facts which would have had no bearing on the jury's verdict. Such facts had no relevance to the elements of Defendant's charges and, even if proven, would not have negated the facts relevant to the Commonwealth's proof of those elements. We believe the jury would have found them to be minor details which would not have had any impact on the credibility attributed to these two witnesses. Trial counsel was able to obtain the police vehicle footage and gave Defendant an opportunity to view it. Defendant agreed that it showed nothing of the search conducted at the scene at

9

Ninth and Mifflin Streets. He has identified nothing which would have been helpful to his case and trial counsel cannot be faulted for failing to present irrelevant evidence at trial.

Defendant further claims that he was not using a cellphone prior to being approached by Officer Thomas, that he had not been inside the Liberty Bar, and that he had not consumed any alcohol prior to his arrest. He complains that trial counsel failed to conduct an investigation regarding these facts and failed to "ask the right questions" of Officer Thomas and Officer Rusz regarding these matters in order to show their lack of credibility. He asserts that trial counsel should have questioned these witnesses as to why no cellphone was introduced as evidence and why there had been no blood or urine tests to determine whether Defendant had consumed alcohol. Defendant wanted these subjects brought up during trial so that the jury could "know exactly what happened." (N.T. 6/25/15 at 25) However, he could not recall whether he even requested trial counsel to conduct such an investigation. He also admitted that he knew of no witnesses who could have testified to these facts and had no other evidence to demonstrate that his version of the facts was accurate.

Trial counsel noted that he did refer to the Commonwealth's failure to produce a cellphone during his closing argument. He further explained that he

10

could not follow up on these matters because Defendant could not give him the names of any witnesses. He also did not want to go too much into what was going on at the scene because the police report had indicated that another individual was with Defendant when he was first observed by Officer Thomas. As Officer Thomas approached, Defendant kicked something that looked like drugs to that individual, and that individual picked up the item and ran into a building. Trial counsel was concerned that if he went into what was going on outside the bar, this would come up and it would suggest to the jury that Defendant had been selling drugs. We believe that this was a reasonable basis for trial counsel to avoid bringing up matters from the scene which would not have been helpful to Defendant in the long run.

Defendant also complains of trial counsel's failure to object to testimony offered by Officer Thomas which indicated that Defendant was on parole. At the jury trial, Officer Thomas had noted that Defendant was on state parole at the time and was not permitted to be in an establishment that sells alcohol. In addition, Officer Thomas also indicated that he would be familiar with the home address of a supervisee. (N.T. Jury Trial 4/3/13 at 14-15) Defendant claims that this testimony implied that Officer Thomas was familiar with Defendant because he was on supervision, thereby causing prejudice in the eyes of the jury.

11

Trial counsel explained that this testimony was offered by the Commonwealth as an explanation for why Officer Thomas was making contact with Defendant. Trial counsel knew that under the circumstances of the case, there would be no way to avoid the subject of Defendant's supervision. He believed that the jury was well aware that Defendant was on state parole at the time because he was detained by a state parole officer. Since there was no way to avoid this subject, he did not object. We find it highly doubtful that the jury would have reached a different verdict had it not known this information.

Despite Defendant's complaints about trial counsel's failure to raise an objection to Officer Thomas's testimony indicating his parole status, he also complains that trial counsel failed to obtain and present documents from Defendant's home and job plan. Defendant contends that this information would have been useful to shed light on his employment status and to show that he was not living in a halfway house.

Trial counsel explained that these records would not have been helpful to the defense and that he did not want to bring up more information regarding Defendant's background with probation and parole. He did not want to "open the door" to Defendant's supervision history as he had a number of previous violations and was behind in the payment of his fines and costs. Trial counsel

12

feared that this might suggest to the jury that Defendant did not have the money for these payments and had been selling drugs because he needed cash. We find no error of judgment on the part of trial counsel in his attempt to minimize any potential prejudice posed by Defendant's supervision history.

Defendant also charges trial counsel's ineffectiveness on the basis that he failed to argue that the number of morphine pills in his possession (thirty-six) was insufficient to sustain a verdict of possession with intent to deliver. He further complains that trial counsel failed to offer any evidence at the jury trial to show that the pills were for Defendant's personal use.

At the PCRA hearing, Defendant gave confusing testimony in this regard. Defendant acknowledged that he did not request trial counsel to present any evidence that the pills were for personal use. Defendant insisted that he had a prescription, but claimed that he did not tell trial counsel why he had the pills in his possession because he had already told prison officials that he was not using any drugs in his intake form. (N.T. 6/25/15 at 14) In the next breath, however, he testified that he told trial counsel that he was taking the pills for leg pain and was not selling them. (N.T. 14)

Defendant admitted that the only evidence which could have been

presented on this issue was his own testimony. (N.T. 21) However, on the morning of trial, Defendant told both trial counsel and the Trial Judge that he would not testify:

Q. Okay. You also indicated that you believe there should have been testimony on your behalf that the pills were for personal use, not sale, correct?

A. Yes.

Q: And what testimony would you have presented?

A. I was ready to testify at my trial.

Q: You were or you were not?

A: I was. But somebody from the DA's Office talked to Ms. Verna and she said that I wasn't sick or dying. At the morning of the trial, he asked me do you want to testify or not that's when I said no, I'm not testifying. Okay. I don't know what's the point when but I said I wasn't sick or an addict. That was a good move.

Q: So your testimony is that Ms. Verna was not going to testify that you had pain problems?

A: No she cannot testify to nothing. I said to her when she asked me and she wrote it down that I wasn't an addict that was the question. I said no, I'm not an addict, and that's not on the paper the prosecution presented at my trial.

Q: And so you decided you weren't going to testify on you own behalf to that information.

A: What was the point? I already said that I wasn't an addict.

14

Q: You recall Judge Tylwalk asking you questions on a recess to make sure you understood you had the right to testify, correct?

A: Yes I do remember that.

Q: And during that, you indicated to him that you did not want to testify?

A: Exactly.

Q: And there were no other witnesses that would have testified for you that you these medical problems and pills for your personal use?

A: No there was no use for any witnesses because I already said that I wasn't an addict and that I wasn't using.

(N.T. 6/25/15 at 21-23)

Trial counsel testified the Defendant had acknowledged to him that he was using the morphine pills, and had told him they were in his possession for his personal use. However, Defendant did not tell trial counsel that he was using the pills for pain. If Defendant had told him that he was using them for pain, trial counsel would have followed up to obtain evidence of his medical condition and the details of his treatment.

Trial counsel also explained that he had defended felony drug cases in the past and was familiar with presenting defenses in such cases. He was familiar with Sergeant Radwanski, the Commonwealth's expert on possession with intent to deliver, and had dealt with him in his past cases. Trial counsel conducted

15

extensive questioning of Sergeant Radwanski regarding the factors relevant to a possession with intent to deliver case and felt that he asked all questions pertinent to the defense of this charge.

We agree with the Commonwealth that Defendant cannot now complain that no evidence was presented to support his position that he was in possession of the morphine pills for personal use due to pain when he provided trial counsel with no information regarding this issue prior to trial. Moreover, although Defendant had the absolute right to decline the opportunity to testify on his own behalf at trial, he admitted that this was the only evidence available on this point.

At the jury trial, Sergeant Radwinski explained that morphine is a highly-addictive controlled substance and that the amount of pills possessed by Defendant is typically prescribed only for someone who is in extreme pain and that it was unusual for someone outside of a care or hospital setting to be in possession of such an amount. Sergeant Radwinski also noted that an individual who was addicted would suffer severe withdrawal symptoms, would require treatment for withdrawal, and would be unlikely to state that he was not dependent so that he could obtain treatment for withdrawal symptoms when entering prison. Since Defendant had informed prison officials that he had no drug dependencies, it appeared that he did not have the pills for personal use.

16

Our review of the trial transcript reveals that trial counsel conducted a rigorous cross-examination of Sergeant Radwinski regarding his opinion. Trial counsel asked numerous questions regarding the money in Defendant's possession, the prison intake form, the way in which the pills were packaged, the lack of necessity of paraphernalia for ingesting such pills, and other issues which would have been relevant to the issue of an intent to distribute. We find nothing more that he could have done under the circumstances.

Defendant's last complaint with trial counsel's performance centers on the post-trial motions and appeal pursued by trial counsel after Defendant was found guilty on these charges. In the Post-Sentence Motion, trial counsel argued that we had erred in denying Defendant's pre-trial suppression motion and challenged the sufficiency of the evidence to support the conviction. Defendant now contends that trial counsel should have challenged the weight of the evidence. He argues that the discrepancy as to where the $280.70 was found and the lack of any evidence of Defendant's use of a cellphone casted significant doubt on the credibility of Officer Thomas and Officer Rusz .

Trial counsel explained that he saw no merit in including a challenge to the weight of the evidence because the determination of what credibility to give to the testimony of these two witnesses was for the jury and he saw no chance that

17

such an argument would be successful.  After reviewing the transcript of the jury trial, we agree with trial counsel that this argument would have been unsuccessful and that he was not required to pursue a meritless avenue at the post-sentence stage of these proceedings.  The claimed inconsistencies were of insignificant matters and were irrelevant to the elements of the offenses with which Defendant was charged.  We find nothing that would indicate lack of credibility on any of the Commonwealth witnesses to such a degree that their testimony should not have been given the credibility attributed to it by the jury.

Defendant's final complaint is with the Court. He asserts that we erred in failing to appoint conflict counsel when we became aware of a breakdown in the relationship between Defendant and trial counsel prior to the jury trial.[2] Defendant notes that he wrote to the Trial Judge about his trial counsel's perceived lack of communication but that we referred him to trial counsel and failed to take any action to alleviate his problems.

Defendant points us to the holding in *Commonwealth v. Tyler*, 360 A.2d 617 (Pa. 1976) for the proposition that although indigent defendants are not entitled to their choice of appointed counsel, they may be entitled to new

---

[2] We do not address the issue raised by the Commonwealth as to whether this claim is cognizable under the PCRA as we find no merit to this complaint.

18

counsel upon a showing of "good cause" in the nature of a conflict of interest or irreconcilable differences between the defendant and his attorney. He claims that he was entitled to new counsel due to a complete breakdown in communication between himself and trial counsel, claiming that he repeatedly requested trial counsel to investigate his case and to produce evidence to refute the Commonwealth's allegations that he had been selling drugs and to show the unreliability of the testimony of Officer Rusz and Officer Thomas.

The situation in *Tyler* is different from this case. In *Tyler*, the defendant complained to the court of an irreconcilable difference between himself and his attorney immediately prior to trial and the breakdown in the relationship was confirmed by the defense attorney. The defendant ended up representing himself at trial after the court gave him the choice of proceeding with appointed counsel or proceeding without an attorney. On appeal, the defendant was awarded a new trial:

> In the instant case, court appointed counsel agreed with appellant that a difference of opinion did exist as to the manner in which the trial should be conducted. Moreover, there is no evidence that appellant's request for appointment of new counsel was arbitrarily made, or made for the sole purpose of delaying the trial. It is therefore clear to us that the court's refusal to appoint new counsel was an abuse of discretion, and appellant is entitled to a new trial, with new counsel, on that basis.

19

Alternatively, we conclude that the trial court committed reversible error by allowing appellant to proceed with the trial under his own representation, without first conducting a thorough on-the-record colloquy to determine whether appellant knowingly and understandingly made a decision to represent himself and also to determine the validity of his waiver of the constitutional right to representation by counsel.

Id. at 619-620.

Here, Defendant made no mention of any complaint regarding trial counsel throughout the pretrial period, at the time of the jury trial, or in post-sentence proceedings. In fact, when questioned by the Court, he stated that he had no complaints about trial counsel's performance. Without knowledge of the existence of any problem, we had no reason to take any measures in this regard. Moreover, our review of the entire record confirms that Defendant had no basis upon which to complain about trial counsel's performance. Thus, even if more complaints had been directed to our attention, there was no reason to appoint new counsel to represent Defendant.

For these reasons, we will deny Defendant's request for collateral relief.

# IN THE SUPERIOR COURT OF PENNSYLVANIA

## MIDDLE DISTRICT

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | : |
| | : |
| VS. | :  **2116 MDA 2015** |
| | : |
| OMAR DIAZ-PERDOMO | : |

## PROOF OF SERVICE

I hereby certify that I am this day serving two (2) copies of the foregoing "Brief for Appellant" upon the persons and in the manner indicated below which service satisfies the requirements of Pa.R.A.P. 121:

Service by First Class Mail:

The Honorable John C. Tylwalk, President Judge
Lebanon County Municipal Building
400 South Eighth Street
Lebanon, PA 17042

Office of the District Attorney
Lebanon County Municipal Building
400 South Eighth Street
Room 11
Lebanon, PA 17042

DATED: 3/21/2016

Erin Zimmerer, Esq.
60 South Main Street
Manheim, PA 17545
(717) 665-1315
I.D.#: 91392

50